Good morning, your honors. May it please the court, my name is Michael Erbily, appearing on behalf of the... Hang on a minute till I get you... I get it. All right, very good, Mr. Erbily, go ahead. Thank you, your honor. My name is Michael Erbily, appearing on behalf of the petitioner, Chor Chor. The Board of Immigration Appeals erred as a matter of law by failing to apply the clear error standard when it vacated the immigration judge's finding that Mr. Chor was entitled to relief under the Convention Against Torture. The I.J.'s finding that Mr. Chor, quote, demonstrated that he would more likely than not face torture or death at the hands of the government if he returns to South Sudan, end quote. It's fully supported by the record evidence. Instead of reviewing the I.J.'s fact findings for clear error, the board reweighed the evidence and substituted its judgment for that of the I.J. This failure to apply the clear error standard is legally erroneous. And Mr. Chor... Counsel, are you familiar with my opinion in Robles v. Barr? I'm not sure... In which I cited First and Second Circuit cases explaining the origin of this regulation and its limited purpose? I'm not familiar with that specific opinion, Your Honor. Our other opinions haven't bothered to do... haven't picked up on that, but I think it was the Second Circuit carefully explained the limited purpose was to stop the development of new evidence on administrative appeals, not to disturb the BIA's traditional authority to take the record before the I.J., review findings for clear error, but also reweigh the evidence. That was the purpose. It's been ignored by too many courts, in my view. Well, as this court has held in Waldron v. Holder, Your Honor, and Ramirez-Pero v. Gonzalez, the court must squarely address the evidence on which the I.J. based its finding. And here the I.J. found that the government would target and torture Mr. Chor with, quote, the specific purpose of punishing him for his father's political activities, end quote. That's at page 148 of the record. And that finding was well supported by testimony and affidavit of Mr. Chor's father, including the testimony that Mr. Chor was named according to the cultural practices of the Dinka tribe and accordingly had the same name as his father, making him easily identifiable in South Sudan. His father testified that the same political actors that targeted him in Sudan are, quote, still there. That's at pages 283 to 284 of the record. His father also testified that, quote, they know me very well and they know my kids, end quote. That's at page 282 of the record. He explained that the government of South Sudan considers him a traitor and will target his son, Mr. Chor, for harm. That is also at page 282 of the record and in his affidavit at page 492 of the record. His father stated specifically that, quote, they will kill him because they are looking for me, end quote. That's at page 281 of the record. And his father described the cycle of intergenerational violence and revenge killings that take place in South Sudan at page 294 of the record. And so all of these, all of this evidence and testimony supports the IJ's finding that Mr. Chor would more likely than not be tortured. Mr. Chor only faced a preponderance of the evidence standard in proving his claim. Our standard of review is substantial. Substantial evidence is articulated by the Supreme Court long ago. This court's standard of review of whether the board properly applied the clear error standard is de novo. If the court then finds that... Yeah, but you just went to the facts. You the board explicitly said it was doing it right under the rig. How can we ignore that? Well, as this court held in Waldron, your honor, the board's statement of the standard of review is not sufficient. The court must actually look at what the board did. And here the board failed to apply that standard. But all they did was, all they did was take, I mean, you just cited evidence that's 20 years after the fact by people who haven't been in South Sudan for 20 years. And the board said it wasn't worth the wait that the IJ thought it was. That is not failing to review for clear error. The board made the implicit finding, your honor, that recent or specific threats are required. And they stated that the harms to Mr. Chor's father happened in the past. Yes. However, the board did not... That's not a finding of fact. That's a conclusion of law. The determination of whether... That's an interpretation of what's required to be shown. The overall determination of whether or not Mr. Chor is likely to be tortured is a finding of fact, your honor. And the board's finding that... What Supreme Court or even a circuit case supports that? The Garcia-Mata versus Sessions case, your honor, states that standard, that it's the overall finding is a finding of fact. And here the board's implicit finding would render the governing regulation superfluous. 8 CFR section 1208.16C3 provides that all relevant evidence of torture must be considered. And it specifically lists four categories. Past torture, the ability of the petitioner to relocate to avoid torture, mass violations of human rights in the country of And so the board's finding that there were no recent or specific threats and therefore Mr. Chor would not likely be tortured renders these other categories of evidence superfluous. The IJ specifically made the finding that Mr. Chor would not be able to internally relocate to avoid torture, which is one of the categories of evidence contemplated by the CFR. That finding is at page 151 of the record. And that finding is supported by the testimony of Mr. Chor's father, that Mr. Chor does not speak the local language in South Sudan, and that people do not speak English there. It's also based on the country conditions evidence at page 540 of the record, that the government restricts the freedom of movement in South Sudan. This finding, which is specifically contemplated by the CFR, is not considered by the board. To get to your honor's earlier point about presenting the evidence versus the board's standard of review, the IJ on this record, a reasonable fact finder could certainly find, as the IJ did here, that Mr. Chor had met his preponderance burden to prove the likelihood of underlying findings that I've just described for clear error. The board substituted its overall judgment for that of the IJ. And that is the board's legal error of law and failure to apply the clear error standard of review. The IJ also found that the country conditions evidence in South Sudan supports the risk of torture. And the country conditions evidence is, again, one of the four categories of evidence specifically contemplated by the CFR. The IJ found that, quote, the country conditions show the current conflict, which started in 2013, reflects tensions that date back to the civil war in the 1990s, end quote. That's at page 148 of the record. And that finding, along with the testimony of Mr. Chor's father, specifically bridges that gap in time between the threats that happened then and the current risk of torture. It also concluded that, the IJ also concluded there was evidence of, quote, gross, flagrant, and mass violations of human rights in South Sudan, end quote. That was at page 150 of the record. And that is another one of the categories of evidence contemplated by the CFR. Finally, the IJ found, based on this country conditions evidence, that government forces, quote, routinely target people for detention, torture, and unlawful killing, based on their perceived political affiliation, end quote. That's at page 148 of the record. And now the board discounted this country conditions evidence, finding that country conditions alone is not sufficient to support the likelihood of torture. And that is true in the abstract, but the IJ did not rely on country conditions evidence alone. The IJ specifically linked that country conditions evidence to the personalized risk of torture to Mr. Chor. That personalized risk included the testimony that the people who targeted Mr. Chor's father are still there. Mr. Chor has the same name as his father, and that the government would likely impute his father's status as a political traitor on Mr. Chor, and target him for that reason. And so it wasn't just the country conditions evidence in isolation that the IJ relied upon. It was that in combination, all the testimony that the IJ specifically found to be credible, and specifically supported the IJ's findings of likely torture. Based on this testimony, a reasonable fact finder certainly could have concluded, as the IJ did, that Mr. Chor had met his burden of proof. The IJ also determined that the political activity, the current political activity, Mr. Chor's father weighed in favor of likely torture. She found that he was vocal about his political beliefs, and has written and spoken out many times against the government of South Sudan. Mr. Chor's father is a member of the Dinka tribe, and the letter of support from Mr. Artema at 501 of the record, specifically gives the example that Mr. Chor's father spoke out against tribal violence committed by the Dinka tribe against the Nuer tribe. And as a result of that... Well, that's a twin city local community leader, right? That is correct. He's not in South Sudan. And with the statements and writings of the father that are being referred to, were they all in this country? They were certainly in this country. The record is not clear whether they were also... So with that analysis, any alien in this country who makes a political statement, which might be picked up in the international press and transmitted back to those in the native country who wouldn't appreciate it, has a claim for a convention against torture relief. That hypothetical is factually distinct, Your Honor. Mr. Chor's father was not just any citizen. He was a member of parliament in Sudan. Of a different government. Different in name, Your Honor. Yes, that is correct. That's your statement. I don't think that's the State Department's view. It is technically a different government. Yes, Your Honor. But he explained that the same political actors are still around, and that he represented South Sudan in parliament. And all of those facts also weighed in favor of likely torture. I see that I'm running into my rebuttal time. Unless the court has any further questions, I will reserve the remainder of my time. Mr. Laforte. Good morning, Your Honors. May it please the court, Dietz Laforte on behalf of the respondent. The board here correctly applied the clearly erroneous standard to overturn the IJ's torture finding because it cited and considered the exact three pieces of evidence that the IJ relied upon. The IJ cited testimony, Ortima's letter, and the State Department's country report in its torture finding. That was at 124 and 125 of the record. At pages 6 through 8, the board cites this exact same evidence in overturning the IJ's torture finding. One, to explain that this evidence did not support the torture finding because it was vague, conclusory, and lacked any detail. And two, it cited this exact same evidence to show that the petitioner here was not at any personal risk to torture. This court really decided two cases that act as a presidential pathway for deciding this case here. The first is Abdi Omar v. Barr, where the court found that the board correctly reversed the IJ's torture finding because the petitioner did not show that he was personally at risk of being tortured. The second, Mohammed v. Gorlin, is a more recent one that the government submitted on 28J. That's at 9-4-638-642, where the 8th Circuit held that the board correctly overturned the IJ's torture finding because, one, the board explained how the IJ's evidence did not support a torture finding, and two, the board cited record evidence to satisfy to the reasonable mind that the In addition to Abdi Omar and Mohammed, the 8th Circuit has a lineage of South Sudanese CAD cases, Jima v. Barr, Lassu v. Barr, and just yesterday, the 8th Circuit published a decision in Deng-Chol v. Gorlin, and the Westlaw side to that is WL-2022 at 4-6-8-0-7-1. The commonality of Jima, Lassu, and Deng-Chol... Counselor, would you please give us a 28J letter on that last one? Judge Locken, the government submitted a 28J yesterday on Deng-Chol. Okay, good. Thank you. Yes, sir. Yes, your honor. The commonality between Jima, Lassu, and Deng-Chol as it relates to these South Sudanese CAD cases is that the petitioner has to exhibit or has to submit evidence of a personal risk of torture. In this particular case, for example, let's look at Artima's letter, the community activist. At 5-0-1 of the record, Mr. Artima explained that there were some members in his community that spoke out, and the petitioner's written and was seen as a traitor of the president and the Deng-Chol tribe. The IG cited to this letter saying, quote-unquote, that he would likely be seen as a traitor. The board cited to this exact same piece of evidence and explained that Mr. Artima's letter was vague and provided no detail that any particular individual in the South Sudanese government or in the Deng-Chol tribe knew Mr. Chol's father, knew about his criticisms, that the criticisms were disseminated throughout South Sudan, or that he was viewed as a traitor by any particular individual. Furthermore, if we examine the State Department country report at 5-12 through 5-14, the country reports discuss a general pattern of violence and abuse against political opponents. The IG citing to the country report said that this, quote-unquote, strongly supported petitioner's claim because the report said that the government routinely targeted perceived political affiliates. Now, the board citing to the exact same piece of evidence that the IG relied upon found that this was not a factual basis exemplifying any personal risk of torture. The circuit has addressed country reports in Abdi Omar, in Jima, and in Lhasu, saying particularly in Abdi Omar, quote, the State Department reports are too high a level of generality to show an individual risk of torture. So the bottom line in this case is that petitioner failed to submit evidence of an individualized risk of torture. The BIA explained, addressed the IG's particular evidence and explained that it did not support a torture finding and it cited to the exact same pieces of evidence to show that the petitioner was not as a personal risk of torture. If the court doesn't have any further questions, the government will yield its remaining time and briefly wrap up. Here that the petitioner, the petition should be denied because there's no personal risk of torture. Abdi Omar and Mohammed serves as the court's precedential pathway to deciding this case. The board here explained how the IG's evidence was vague, conclusory, and lack detail to support an individualized risk of torture and it cited to the same three pieces of evidence to show that there was no personalized risk of torture. Under Omar, particularly, that is sufficient justification that the IG erred. Thank you. Thank you, counsel. For rebuttal, Mr. Feverling. I apologize. Now I'm un-muted. Thank you, your honor. Opposing counsel referred to the Artema letter and the country conditions reports, but he did not address testimony of Mr. Chor's father, which provides the specific and particularized risk of torture to Mr. Chor. Namely, that he would be targeted due to his father's political affiliation and past political actions. That is the evidence that the board did not relocate within South Sudan, which is one of the specific categories of evidence contemplated by the CFR. The board did not consider this finding of the IG, and that's another category of evidence that the board failed to consider and thus failed to meet its clear error standard of review. I will briefly address the cases that opposing counsel raised. Abdi Omar is distinct on its facts. That case involved removal to Somalia, not South Sudan. There, the alleged risk of torture was provided solely by the petitioner's ethnic affiliation and HIV status. There was no finding of political risk in that case, such as we have here. In Mohammed, that case also dealt with removal to Somalia and not South Sudan. There, there was specifically no evidence that petitioner could not relocate within Somalia to avoid torture. That is contrary to the IG's specific finding here that Mr. Chor could not relocate to avoid torture in South Sudan, and is therefore an opposite. Opposing counsel also referenced the Dang Chol case that was just decided yesterday. That case did involve removal to South Sudan, but is distinct procedurally. There, it affirmed the board's finding that there was no likelihood of torture. Only evidence presented regarding likelihood of torture was ethnic affiliation and not political risk, as is here. I see I'm out of time, your honors. Unless you have any further questions, I respectfully request that the petition be granted. Very good. Thank you, counsel. The case has been thoroughly briefed and argued, and we'll take it under advisement.